[Civ. No. 19525.    First Dist., Div. One.    May 24, 1961.]

NICK BACICH et al., Respondents, v. CARRELL J. RUSSELL et al., Defendants; ELIZABETH KIMBERLIN, Appellant.

LILLIAN ROMERO et al., Respondents, v. CARRELL J. RUSSELL et al., Defendants; ELIZABETH KIMBERLIN, Appellant.

(Consolidated Cases.)

Bledsoe, Smith, Cathcart, Johnson & Phelps and R. S. Cathcart for Appellant.

Vernon W. Humber, McMurray, Walker & Tepper and Lloyd E. McMurray for Respondents.

WOOD (Fred B.), J. pro tem.*—Plaintiffs brought these actions to recover damages for injuries received in an automobile collision which occurred at the intersection of Laguna and Oak Streets, San Francisco, on the 28th of February, 1957, at 10 o'clock a. m. Verdict and the ensuing judgments were for the plaintiffs. Defendant Kimberlin has appealed.

Plaintiffs were in a car which was a part of a funeral procession that was traveling south on Laguna. Defendants, in two separate cars, were traveling east on Oak. Traffic control signals displaying green, amber and red lights, located on each of the four corners of the intersection, were in operation at the time. Defendants testified that they entered the intersection on a green light and claimed the right of way under the provisions of section 476 of the Vehicle Code.[1]

Plaintiffs claimed the right of way under a San Francisco ordinance, the significant provisions of which read as follows: "Whenever any funeral procession identifies itself by using markers, approved by the Police Commission, and by maintaining lighted headlamps, on all cars in such procession and by keeping all cars in close formation, *the operator of any other vehicle and street car, except emergency vehicles, shall yield the right of way thereto. Such funeral processions shall*

---

*Assigned by Chairman of Judicial Council.

[1] Except as otherwise indicated, each reference to the Vehicle Code is to the Vehicle Code of 1935 as it existed on February 28, 1957, the date of the accident.

*have such right of way regardless of directions indicated on traffic control signal devices."* (§ 102 of Traffic Code, pt. II, ch. XI, S. F. Mun. Code; emphasis added.)

Each of the cars in the procession bore the approved marker on its windshield and had its headlights on. There was testimony that the cars in the procession were in "close formation"; i.e., no substantial distance separated one car from another. But there was also testimony that plaintiffs' car momentarily stopped on the red light, immediately north of the intersection, just prior to the accident, that the cars ahead of it cleared the intersection and plaintiffs' car then proceeded into the intersection with the red light against it. Defendant Kimberlin testified that she saw no procession. A police officer testified that plaintiff Lillian Romero, the driver of plaintiffs' car, told him that she was in the funeral procession, entering the intersection against the red light. At the trial she testified that she entered the intersection on the green light, which turned yellow as she reached the middle of the intersection.

The trial court instructed the jury in terms both of the ordinance and of section 476 of the code, and informed the jury that if a party to the action violated a statute or an ordinance that had been read to the jury a disputable presumption arose that such party was negligent. As expressed by plaintiffs in their brief, "the jury was told that the right of way at the intersection belonged to the driver with the green or yellow light, except that the drivers in the funeral procession had the right of way if they were fulfilling all of the conditions of the ordinance."

The first major question involves the validity of the ordinance. We are dealing, of course, with a subject that is of state interest and concern, not a municipal affair. (*Ex parte Daniels,* 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172].) Accordingly, local regulations in this field, to be effective, must be such "as are not in conflict with general laws." (Cal. Const., art. XI, § 11.) It often happens that the question whether a local ordinance is "in conflict with" a state statute on a given subject is not easy of solution. The pertinent principles of law and the rules for determining their applicability were enunciated in *Pipoly* v. *Benson,* 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515]. The gist of the problem in our case is to ascertain the legislative intent. ▮ "Where the statute contains language indicating that the Legislature did not intend its regulations to be exclusive, the general rule permitting

supplementary local regulations has been applied. . . . Conversely where the statute contains express provisions indicating that the Legislature intends its regulations to be exclusive within a certain field, the courts have given effect to this intention.'' (Pp. 371-372 of 20 Cal.2d.)

We start with section 458 of the Vehicle Code which declared: ''The provisions of this division [div. 9 of the code] are applicable and uniform throughout the State and in all counties and municipalities therein and no local authority shall enact or enforce any ordinance on the matters covered by this division unless expressly authorized herein.'' (Stats. 1935, ch. 27, p. 93 at p. 164.) On February 28, 1957, the date of the accident here involved, Division 9 of the Vehicle Code consisted of sections 449 to 604.13, inclusive.

For such express authority we turn to section 459 of the Vehicle Code. Throughout the period 1935 through February 1957, that section provided in part as follows:

''459. The provisions of this division [div. 9] shall not prevent local authorities within the reasonable exercise of the police power from adopting rules and regulations by ordinance or resolution on the following matters:

''(a) Regulating or prohibiting processions or assemblages on the highways.

''(b) Licensing and regulating the operation of vehicles for hire.

''(c) Regulating traffic by means of traffic officers.

''(d) Regulating traffic by means of semaphores or other traffic control signaling devices. . . .'' (See Stats. 1935, ch. 27, p. 93 at p. 164, and Stats. 1955, ch. 302, p. 752.)

If we had nothing further to consider we might perhaps conclude that in exercising these co-ordinate powers (regulating processions, regulating traffic by traffic officers, regulating traffic by signal devices) it would be quite competent for a city or county to give a funeral procession precedence over signal lights, at least as to highways under the exclusive control of the city or county.[2] And so it may have been until 1939 when the state entered this field by enacting section 476 of the Vehicle Code, laying down certain specific requirements

---

[2]We observe that in the exercise of the power to regulate traffic ''by means of semaphores or other traffic control signaling devices'' (subd. (d) of § 459), a local authority was limited to highways under its exclusive jurisdiction.

In the case of a state highway, written approval of the State Department of Public Works was necessary before such a local regulation could become effective.

concerning the use of traffic control signals. Section 476 started out with this declaration: "Whenever traffic is controlled by official traffic control signals exhibiting the words 'Go,' 'Caution,' or 'Stop,' or exhibiting different colored lights successively, the following colors only shall be used and said terms and lights shall indicate as follows: . . . ." (Stats. 1939, ch. 320, p. 1606 at p. 1607.) Then, in subdivisions (a) to (e), inclusive, it stated the commands which the several terms and lights indicated. For example, if the light be green, vehicular traffic "facing the signal shall proceed straight through or turn right or left or make a semicircular or U turn unless a sign at such place prohibits such turn," pedestrians "facing the signal may proceed across the roadway within any marked or unmarked crosswalk"; if the light be red, vehicular traffic "facing the signal shall stop before entering the nearest crosswalk at an intersection or . . . and shall remain standing until green . . . is shown alone, except as provided . . . ," and no pedestrian "facing such signal shall enter the roadway until green . . . is shown alone"; if the light be yellow, then certain other duties were specified.

Obviously, these provisions operated as a limitation upon the power of any city to regulate traffic control signals. In doing so it could not use a purple light in place of red, blue instead of green, or white in lieu of yellow. Nor could a local legislative body, we might reasonably infer, while operating "traffic control signals . . . exhibiting different colored lights successively," use any type of signal device to contradict the commands which a green light or a red light or a yellow light indicated, as prescribed by section 476. If a city could not do this directly, could it do so indirectly through the medium of regulating processions?

The Legislature did not leave this to inference. In subdivision (f) of section 476 it declared: "No person shall disobey the directions of this section except when it is necessary for the purpose of avoiding a collision or in case of other emergency or when otherwise directed by a police or traffic officer, or as permitted under section 454." Here the Legislature was saying, in unmistakable terms, that the "directions" of "this section" must at all times be obeyed while and during such times as traffic at a particular point was being controlled by official traffic control signals "exhibiting different colored lights successively." When the lights were off, this section issued no directions; when they were on, it did issue them.

When the lights were on, no disobedience to the directions of this section was allowed except within very narrow limits: (1) for the purpose of avoiding a collision, (2) in case of other emergency, (3) when otherwise directed by a police or traffic officer, or (4) as permitted the driver of an authorized emergency vehicle in the circumstances and under the conditions prescribed by section 454 of the Vehicle Code. A funeral procession is none of these. The only latitude here allowed a local legislative body was the power to direct ''otherwise'' through the medium of a police or traffic officer. Significantly, this, as we have seen, was one of the powers given local agencies by section 459 of the code. The selection of this one local power from among the local powers specified in section 459 spoke eloquently of an intent to limit local agencies to this single method of ''otherwise'' directing and to deny them the power to do so in any other manner. This impels the conclusion that upon enactment of section 476 in 1939 local agencies lost such power as they may otherwise have had to authorize the driver of a car in a funeral procession to disregard the ''directions'' indicated by traffic control signals of the type under discussion, unless he were otherwise directed by a traffic officer.

There was no change in this regard between the date of enactment of section 476 and February 28, 1957, the date of the accident here involved. Although sections 459 and 476 were, respectively, several times amended between those dates, no changes were made in the pertinent provisions of either section. Subdivision (a) of section 459 continued to read the same as in 1939, as did also subdivision (f) of section 476.[3] The governing principle in such a case is furnished by section 9605 of the Government Code: ''Where a section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form. The portions which are not altered are to be considered as having been the law from the time when they were enacted, and the new pro-

---

[3]As to section 459 see Stats. 1935, ch. 27, p. 164, and ch. 590, p. 1679; Stats. 1949, ch. 572, p. 1061; Stats. 1951, ch. 721, p. 1990, and ch. 1392, p. 3326; Stats. 1953, ch. 709, p. 1978; and Stats. 1955, ch. 302, p. 752.

As to section 476, see Stats. 1939, ch. 320, p. 1607; Stats. 1945, ch. 1251, p. 2364; Stats. 1947, ch. 1256, p. 2768; Stats. 1953, ch. 848, p. 2175; Stats. 1955, ch. 584, p. 1077.

A change in respect to ''pedestrians'' was made in 1953, adding subd. (g) to section 476, in adjustment to new section 476.1, added by the same chapter. (Stats. 1953, ch. 848, pp. 2175 and 2177.) But that does not affect our problem, save perhaps to emphasize the restrictive character of subd. (f) of section 476.

visions are to be considered as having been enacted at the time of the amendment.'' Section 9605 was a continuation of section 325, Political Code, without substantial change. (See also *Barber* v. *Palo Verde etc. Co.,* 198 Cal. 649, 651-652 [246 P. 1044]; *Estate of Childs,* 18 Cal.2d 237, 242-243 [115 P.2d 432, 136 A.L.R. 333].)

The purpose of issuing the mandates declared in section 476 and denying local authorities power to countermand them seems obvious. It was that of making signal lights, and the directions which they indicate, uniform throughout the length and breadth of the state, fostering traffic safety by enabling every user of the highways to know his rights and duties and the rights and duties of others. Such factors, in the view of the Legislature, outweighed the inconvenience of compliance with those requirements upon the part of the drivers of cars in a funeral procession or the extra work of manipulating the signals so as to give such a procession green lights throughout its course or of posting traffic officers at appropriate points along that course to ''otherwise direct'' the traffic.

The giving of the instruction based upon the invalid ordinance clearly constituted error. (*Pipoly* v. *Benson, supra,* 20 Cal.2d 366, 369.) Under the circumstances of this case it constituted reversible error.

Plaintiffs contend that the validity of the ordinance is not a necessary question on this appeal. Their argument in support of this contention is not persuasive. They seem to say that if the jury found that plaintiffs entered the intersection on the green or yellow light, the Vehicle Code applied and the ordinance added nothing; or, if the jury found that plaintiffs entered against a red light, the jury should have inferred they were prima facie negligent, which negligence might be excused if the cars were in ''close formation,'' in which case there would be cars in the intersection, visible to defendants, charging them with a duty of caution under the general law, again rendering the ordinance mere surplusage. This is too speculative to serve as a basis for concluding that the error of giving instructions based upon the invalid ordinance was not prejudicial. We can not say with any assurance that the same verdict would probably have been rendered if this erroneous instruction had not been given.

This, of course, is not a determination that the provisions of section 476 of the Vehicle Code constituted the only limita-

tions upon the exercise of regulatory powers given local authorities by section 459 of the code.

The judgments from which defendant Elizabeth Kimberlin appealed are reversed as to her.

Tobriner, Acting P. J., and Duniway, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 19, 1961.