## Brazier, Appellant, *v.* Philadelphia.

215      297
f 36 SC  362

*Automobiles—Municipalities—State act—City ordinance—License.*

The ordinance of the city of Philadelphia of December 2, 1902, requiring the owner of an automobile to take out a license and to carry a city license tag is not repealed or superseded by the Act of April 19, 1905, P. L. 217, which provides that the owner of an automobile shall procure a license from the state highway department of the Commonwealth, and that state license tags shall be carried exhibiting the license number and the number of the year.

Argued March 23, 1906. Appeal, No. 378, Jan. T., 1905, by plaintiff, from decree of C. P. No. 4, Phila. Co., Dec. T., 1905, No. 963, refusing an injunction in case of H. Bartol Brazier, Charles S. Wurts, Jr., and Samuel Y. Heebner v. City

of Philadelphia, John Weaver et al.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ.   Affirmed.

Bill in equity for an injunction.

WILLSON, P. J., filed the following opinion :

On December 26, 1902, an ordinance of the city of Philadelphia was approved, which was intended to regulate the use of automobiles and similar conveyances within the limits of the city.   It prescribed that, before any such vehicle could be used, a certificate must be procured from the Bureau of Boiler Inspection, setting out various regulations or requirements in regard to the construction and appliances of the vehicles. These regulations all looked to the element of safety in the use of the machine.   In addition, the ordinance provided that no person should drive an automobile without obtaining a license from the department of public safety.   Preliminary to the obtaining of a license it was necessary for the applicant to furnish satisfactory evidence of his competency.   It was also provided that no person in charge of an automobile or similar vehicle should drive or operate the same at a rate of speed greater than seven miles per hour, within the built-up portions of the city, and at a rate greater than eight miles per hour in other portions of the city.   Various other regulations were prescribed in regard to the exhibition of lights at night and the placing of tags bearing license numbers upon the vehicle.   Various other regulations were also contained in the ordinance, which, however, it is not necessary to enumerate or refer to.   By express provision, the clause relative to the using of licenses was made inapplicable to drivers of automobiles from other localities passing through the city, for a period of forty-eight hours.

On April 23, 1903, an act of assembly was passed which related to the same class of vehicles, and provided that no such vehicle should be operated on the highways of the commonwealth without being registered in the office of the prothonotary of one of its counties.   The prothonotary was directed to enter the application for registration in a book kept for the purpose, and in a proper case to issue a certificate of registration to the applicant.   It was directed that the certificate be placed in a prominent position on the vehicle, and that the registration

number should be displayed conspicuously upon the back of the vehicle. The statute provided that no person should be allowed to use or operate a motor vehicle at a speed greater than eight miles an hour within the corporate limits of any cities and boroughs of the commonwealth, or at a rate exceeding a mile in three minutes outside of the corporate limits thereof. Under the provisions of the statute, no person was allowed to use or operate such a vehicle on the highways until the owner should have procured a license from the treasurer of one of the cities or counties of the commonwealth, and this license was ordered to be displayed conspicuously upon the back of the vehicle.

Under the ordinance previously referred to, and the act of assembly just mentioned, the use of automobiles within the limits of the city of Philadelphia has grown to be extensive, and, so far as appears, there has been no practical difficulty in the enforcement of both ordinance and statute or any suggestion that they were incompatible or inconsistent. It is claimed on behalf of the plaintiffs, however, that whatever may have been the case previously the condition of affairs was altered when the act of assembly of April 19, 1905, came into existence. That statute enacted that no motor vehicle could be operated within the highways of the commonwealth until the operator of the vehicle should procure a license from the state highway department of the commonwealth. That department was directed to enter the application for a license in a particular book and in a proper case to issue a license to the applicant, together with two tags exhibiting the license number and the number of the year. For this license, as well as for the licenses called for by the ordinance of 1902, and the act of assembly of 1903, a fee was to be paid. It is provided in the statute that not more than one state license number should be carried upon front and back of the vehicle, and that a " license number obtained in any other place or state shall be removed from said vehicle while the vehicle is being used within this commonwealth."

Various other provisions are contained in the act in regard to the exhibition of lights, display of tags, appliances of the machines, carrying of licenses, etc., but these need not be detailed.

In regard to the rate of speed it was enacted that "no person or persons shall be allowed to use, operate or drive any motor vehicle, as aforesaid, on any of the public streets or public highways of the cities, boroughs, counties or townships of this commonwealth at a speed greater than a mile in six minutes, within the corporate limits of any of the cities and boroughs thereof; outside of the corporate limits of any city or borough, as aforesaid, the lawful rate of speed shall not exceed one mile in three minutes." There was a proviso that in townships of the first class the commissioners may, by ordinance, fix a rate of speed of not less than one mile in six minutes; and also that the section containing the provision as to rate of speed should not permit any person to drive an automobile faster than is reasonable, "regarding traffic, danger, or injury to property or person, at any time or at any place."

It is contended on the part of the plaintiff that this act of 1905 must be regarded as superseding and obliterating the ordinance of 1902, and as supplying the sole method of regulating the use of automobiles within the commonwealth. Plaintiffs are taxpayers within the city, and being apprehensive that the municipality, in making preparation for carrying out the provisions of the ordinance for the year 1906, will be obliged to make certain expenditures of the public funds, have filed the bill in this case to prevent the public officers from taking any steps in that direction.

It is, of course, beyond all question that, if the statute and the ordinance are inconsistent, or, if the statute can fairly be regarded as intended to supplant the ordinance, the latter must give way and the statute only have effect given to it. Paramount authority of the lawmaking power of the state over the lawmaking power of the city must be conceded. The question, therefore, comes down to this: Is there any necessary incompatibility between the statute and the ordinance, or does it sufficiently appear that the statute was intended to furnish the sole rule of conduct and regulation for the use of automobiles and similar vehicles?

In the absence of any state legislation covering the subject, either expressly or by implication excluding the power of the municipality to legislate upon the same, that the city would have the power to enact such an ordinance as is under consid-

eration must be conceded.    That probably will not be denied.
Under the general powers which were conferred on the city of
Philadelphia at the time of the consolidation of the city with
the old surrounding districts, and which have been acted upon
ever since in numerous instances, the city undoubtedly had the
right by ordinance to legislate in regard to the use of the
streets for the protection and safety of its citizens.    The or-
dinance of 1902 was passed, as it seems to us, in the exercise
of full power to enact it.    It contained many provisions more
detailed and specific and better adapted in our judgment, to pro-
tect the people using the streets of the city from injury, than
the act of 1905, and unless there is some imperative reason for
holding that the ordinance has been superseded by the act, we
are not inclined to reach such a conclusion.    In particular we
may refer to the provisions in the ordinance that the rate of
speed of automobiles in the built-up portion of the city shall
not exceed seven miles an hour.    This is a most salutary pro-
vision, and it ought to be enforced far more rigidly than it is.
It is only necessary to resort to the most cursory observation
to find the evidence that many drivers of automobiles, in their
desire to put their novel and rapid machines to a test of their
capacity, drive such vehicles through the streets with a reck-
less disregard of the rights of others.    That is done with an
absolute disregard of the provisions not only of the ordinance,
but of the statute, which, as before stated, expressly provides
against an unreasonable rate of speed.

In examining the act of 1905 for the purpose of ascertain-
ing whether or not it contains provisions intended to take the
place of a local or municipal regulation upon the same subject,
it may be noted in the first place that it contains no expression
of an intention to that effect.    It undoubtedly provides for a
state regulation for the use of automobiles ; this it does prin-
cipally by the language of prohibition rather than affirmation.
We are, however, not convinced that, simply because the state
has undertaken to impose certain regulations applicable to the
entire commonwealth, this excludes the right of a city to im-
pose other regulations adapted to its own peculiar conditions,
provided these are not inconsistent or at variance with those
of a general character prescribed for the entire commonwealth.
See Radnor Township v. Bell, 27 Pa. Superior Ct. 1.    If there

be such inconsistencies between the statute and the ordinance, then to the extent that these exist, for the reasons already indicated, the ordinance must give way. It may be said that, if both statute and ordinance are to stand in full, then the operator of an automobile must take out two licenses before he can run the vehicle within the commonwealth. That may be, but we fail to regard that as a conclusive objection in the case. Under the terms of the ordinance in question, the license to be obtained from the city is one which is based upon other examinations and requirements than such as were imposed by the statute, although such examinations and infringements we do not regard as inconsistent with anything contained in the statute. No satisfactory argument has been presented to us against the right of the city to require such additional guarantees, and to require also that a license shall be obtained showing that the city's demands have been complied with.

It has been argued that the act of 1905 was intended to provide that only one license number or tag shall appear upon the front and back of the vehicle when operated on the highways, but we do not regard this to be the proper construction of the act. In its second section it is provided that only one "State license" number shall be carried upon the vehicle. There is no prohibition against the carrying of a license which was not a state license, and the limitation of the prohibition to a single class of licenses implies that it was not intended to exclude a local municipal license from being carried upon the vehicle. And when in the same section it was enacted that a "license number obtained in any other place or State shall be removed from said vehicle while the vehicle is being used within this Commonwealth," we understand that no reference was intended to be made to any such license as the city would issue under the ordinance in question. We do not think that the word "place" can properly be regarded as applying to a municipality within the commonwealth. It seems to us very plain that what was intended to be enacted by the clause just cited was that a foreign license number should be removed from any vehicle which comes from another territorial division outside of the state into the limits of the state, and only in such a case. The language "while the vehicle is being used within this Commonwealth" seems to indicate clearly that the vehicle

in mind was one which comes from outside the commonwealth.

It may, however, be argued that there is an incompatibility between the statute and the ordinance in the different provisions which are contained in the two with reference to the rates of speed at which an automobile may be driven. The statute provides that no person shall be allowed to operate such a vehicle above a certain maximum speed under certain conditions. The question might arise as to what is meant by the term " allowed," and as to who or what authority might allow the use or operation thereof. Perhaps it would not be straining the force of language to construe this provision as referring to the constituted authority having jurisdiction over highways in any particular district. Aside from this point, however, it must be noted that the legislature only prohibited the driving of automobiles or similar vehicles at a higher rate than the fixed maximum speed. It did not state that they might be driven at that rate, except by implication, and that implication may be regarded as having been overcome by the further provision that the prohibition against exceeding a certain maximum rate should not be construed as permitting any person to drive an automobile at a greater speed than is reasonable. It does not seem to us that this restriction of the force of the provision regulating the rate of speed should be regarded as applicable only to a particular case, where the question of the reasonableness of the speed might come before a jury, say, in an action for negligence. In the absence of any prohibition against local legislation, it would rather seem to us that the legislature intended that the local authorities having jurisdiction over such a class of subjects, and having special knowledge of ·the conditions of their own localities, might, by ordinance, determine what should be a reasonable rate of speed. This we believe to be a permissible construction of the statute before us, and we believe that such a construction will best promote the interests of the various communities of the commonwealth composed of people living in closely built towns and cities, and that no unreasonable restrictions are thereby placed upon people who desire to make use of the modern horseless vehicles, with due regard to the rights of others.

We are unable to find in other portions of the act of 1905

anything which conflicts with the ordinance of 1902; and, in view of what we have already stated, we have reached the conclusion that the injunction prayed for must be refused.

*Error assigned* was refusal of injunction.

*Ira Jewell Williams* and *Hampton L. Carson*, attorney general, for appellants.—Highways being universally the property of the state, are subject to its absolute direction and control: Phila. & Trenton R. R. Co., 6 Wharton, 25; Com. v. R. R. Co., 27 Pa. 339; Philadelphia v. River Front R. R. Co., 173 Pa. 334; Allegheny v. Ry. Co., 159 Pa. 411; Com. v. Harris, 10 W. N. C. 10.

The power of city councils over the highways is limited and subject to the sovereign power of the commonwealth : Com. v. Moir, 199 Pa. 534; Philadelphia .v. Fox, 64 Pa. 169.

An ordinance inconsistent with or repugnant to an act of assembly is void: Gibbons v. Ogden, 22 U. S. 1; Lesley v. Kite, 192 Pa. 268; Jadwin v. Hurley, 10 Pa. Superior Ct. 104; Com. v. Brown, 210 Pa. 29.

A license to run a vehicle " is a permission or authority to do that thing; and if granted by a person having power to grant it, transfers to the grantee the right to do whatever it purports to authorize: " Sinnot v. Davenport, 63 U. S. 227 ; Youngblood v. Sexton, 32 Mich. 406 ; Furman Farm Imp. Co. v. Long, 113 Ala. 203 (21 So. Repr. 339); Yount v. Denning, 52 Kans. 629 (35 Pac. Repr. 207); United States v. Cutting, 70 U. S. 441.

In the absence of express authority, no subordinate may require an additional license to do that which the sovereignty has granted permission to do : Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206; Schollenberger v. Pennsylvania, 171 U. S. 1 (18 Sup. Ct. Repr. 757); Lancaster County v. Frey, 128 Pa. 593; Chinese Laborers, 13 Fed. Repr. 291; Philadelphia v. Ridge Ave. Pass. Ry. Co., 102 Pa. 190.

A municipality cannot, by prohibiting under cumulative penalty, an action prohibited by the state, interfere with the uniform operation of a general act of assembly : Radnor Twp. v. Bell, 27 Pa. Superior Ct. 1; Com. v. Lloyd, 141 Pa. 28.

The clear general intent of the legislature was to establish a uniform general system regulating the subject-matter.   This

must necessarily be exclusive : Com. v. Iron City Brewing Co., 146 Pa. 642; Gwinner v. R. R. Co., 55 Pa. 126.

The ordinance of councils of December 26, 1902 has been suspended or superseded by the Act of assembly of April 19, 1905, P. L. 217, in so far as the former requires a license from the city or the carrying of a city license tag.

*Jomes Alcorn,* with him *Ernest Lowengrund* and *John L. Kinsey,* for appellees.—The United States courts and the courts of at least twenty-nine states fully support the right of a municipality to make new and further regulations in the exercise of its police power, and to enforce them by proper penalties, even though the state has previously acted by a general law in reference to the same matter: Rogers v. Jones, 1 Wendell, 237 ; Greenville v. Kemmis, 58 South Carolina, 427 (36 S. E. Repr. 727) ; City of Quincy v. O'Brien, 24 Ill. App. 591; Johnson v. Philadelphia, 60 Pa. 445; Atlantic & Pac. Tel. Co. v. Philadelphia, 190 U. S. 160 (23 Sup. Ct. Repr. 817); Philadelphia v. Western Union Tel. Co., 2 W. N. C. 455 ; Radnor Twp. v. Bell, 27 Pa. Superior Ct. 1.

PER CURIAM, May 14, 1906.
Decree affirmed on the opinion of the court below :