## Ex parte SHAW.

No. 7630.   Opinion Filed February 8, 1916.

Rehearing Denied May 23, 1916.

(157 Pac. 900.)

1.   **MUNICIPAL CORPORATIONS—Police Regulations—Statutory Provisions—Repeal.** Article 2, sec. 3, par. 30, of the charter of the city of Tulsa, which gave power to that city to regulate the use of automobiles, and to issue permits for the use of such vehicles, and to require the numbering thereof, pursuant to which the city, by Ordinance No. 1165, as amended by Ordinance No. 1250, imposed a license fee upon the owners of automobiles for the privilege of operating upon the public streets of the city and providing a penalty, was repealed by section 8, art. 4, c. 173, General Highway Law of 1915, providing, among other things, that local municipal authorities should have no power to pass any ordinance requiring from any such owner any fee, license, or permit for the use of the highways, or excluding any motor vehicle registered in compliance with the act from the free use of the public highways, and that "no ordinance, rule or regulation in any way contrary to or inconsistent with the provisions

of this article, now in force or hereafter enacted, shall have any force or effect." Hence said ordinance, imposing a tax as stated, is void and unenforceable.

2.  TAXATION—Power to Tax—Constitutional and Statutory Provisions. General Highway Law 1915, c. 173, art. 4, sec. 11, is not in conflict with Const. art. 10, sec. 20.

3.  TAXATION—Property Subject—Exemptions. General Highway Law 1915, c. 173, art. 4, sec. 3, is not in conflict with Const. art. 5, sec. 50.

4.  LICENSES—Constitutional Provisions—Uniformity—"Tax." The license fee in question is not a "tax," within the meaning of Const. art. 10, sec. 5, requiring that taxes shall be uniform upon the same class of subjects.

(Syllabus by the Court.)

Original application by Fred G. Shaw for writ of *habeas corpus*. Petitioner discharged.

*Poe, Hindman & Sneed,* for petitioner.

*John R. Ramsey* and *John R. Woodard,* for respondent.

TURNER, J. The charter of the city of Tulsa (article 2, sec. 3, par. 30) grants power to the city to "regulate the use of automobiles, * * * and the speed thereof, * * * to issue permits for the use of such vehicles and to require the numbering of said vehicles."

On August 29, 1915, petitioner was arrested, charged with driving an automobile on the streets of said city in violation of Ordinance No. 1165, as amended by Ordinance No. 1250, the pertinent part of which reads:

"Section 1. That it shall be and is unlawful for any person * * * to use or operate upon any public street * * * of the city of Tulsa * * * any motor vehicle * * * without registering such vehicle in the office of the commissioner of finance and revenue of said city, as hereinafter provided. Before any vehicle shall be entitled to registration the owner thereof shall pay to said commissioner of finance and revenue a license fee

for the operation of such vehicle in said city, to wit: For each motor vehicle  *   *   *   the sum of $5.00 per annum."

"Sec. 2.   After payment of the license fee prescribed by section 1 of this ordinance, the owner of such vehicle shall furnish to the commissioner of finance and revenue a brief description of the vehicle to be registered,  *   *   * and it shall thereupon be the duty of the commissioner to register. said vehicle and the description thereof in a book to be kept for that purpose."

Whereupon the commissioner was required to deliver to the owner of the vehicle a number plate, to be attached to the rear of the car.   Petitioner had complied with the "general highway law" (chapter 173, art. 4, sec. 1 *et seq.*, Sess. Laws 1915), and had paid a registration fee and taken out a license from the Department of Highways, and the department had issued him a certificate of registration and a number plate, which he had displayed on the rear of his car as required by that act. The ordinance and the act required of him substantially the same thing.   In support of his right to be released on *habeas corpus* he relies on on section 8 of said act, which reads:

"Subject to the express provisions of this article local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner to whom this article is applicable any tax, fee, license or permit for the free use of the public highways, or excluding or prohibiting any motor vehicle registered in compliance with this article from the free use of the public highways or the accessories used thereon, and no ordinance, rule or regulation in any way contrary to or inconsistent with the provisions of this article, now in force or hereafter enacted, shall have any force or effect"

—and contends that said section supersedes the ordinance. In the absence of said section it might be successfully maintained that, there being no conflict in the requirements of the ordinance and the statute, both might stand together and run concurrently, so as to require the payment of a license or registration fee by petitioner to both the city and the state. But in view of said section, which imposes an express restriction on the city to enforce the ordinance, petitioner's contention must be sustained. In a valuable note to *Brazier v. Philadelphia,* 215 Pa. 297, 64 Atl. 508, reported in 7 Ann. Cas. 551, the learned author says:

"The reported case holds that, in the absence of an expressed or implied restriction imposed by the Legislature, a city, by virtue of its power to protect its citizens in the use of its streets, has the right to pass an ordinance regulating the use of automobiles within the city limits. It also holds that a city ordinance for this purpose is not superseded or annulled by a subsequent statute on the same subject, designated to operate throughout the entire state, unless the two enactments are so inconsistent that they cannot stand together, or unless it appears from the terms of the statute that it is intended to supplant the ordinance. This latter holding is merely an application of the well-settled general principle that the right of a city to pass an ordinance in the exercise of its police power is not necessarily taken away by the enactment by the state of a general law on the same subject. If the two enactments conflict, the ordinance must give way; but if they do not conflict, both should be given effect."

In the light of which we believe that the Legislature intended by section 8 to deprive the city of the power contained in its charter to pass, or, if passed, to enforce, any ordinance requiring an additional fee for the same privilege afforded by a compliance with the act. Such

being intended, and petitioner having registered his motor vehicle in compliance with the act, we are of opinion that he is entitled to the free use of the public highways of the city, and that the ordinance complained of is void.

In *City of Newport v. Merkel Bros. Co.*, 156 Ky. 580, 161 S. W. 549, the city, on June 4, 1909, passed an ordinance in effect levying a license fee on all persons using an automobile on the streets of the city. Later the state passed an act doing substantially the same thing, in which it exempted from the payment of the tax non-residents who had complied with the law of their domicile in procuring such license. In a suit by such nonresident to test the validity of the act, and to enjoin a threatened prosecution under the ordinance so far as plaintiff was concerned, the court in effect held that the ordinance, in so far as it required an automobile license for motor vehicles owned by nonresidents, who had complied with the law of their domicile in procuring a license, was in conflict with and was superseded by the act, and hence the ordinance was inoperative and void. Referring to the act, the court said:

"Manifestly this statute was enacted by virtue of the police power of the state, and is designed to regulate the use of motor vehicles. Properly speaking, it is not a revenue measure, though incidentally revenue is derived therefrom. Undoubtedly the state has the right. under the police power, to legislate in the interest of the public health, public safety, or public morals. There can be no question, therefore, of the right of the Legislature, in the exercise of the police power, to regulate the driving of automobiles and motorcycles on the public ways of the commonwealth; and, while the city of Newport has the power from the state to tax, and may, under the police power, by ordinance, reasonably regulate the use that may be made of its streets by automobiles and other ve-

hicles, either or both these powers are subject to any statute of the state in force, and may be withdrawn from it by the Legislature of the state. Indeed, it may be said to be a recognized doctrine that the power of the Legislature with respect to police regulation cannot be delegated by that body, so as to preclude the resumption of the power by it. This rule is stated in 25 Cyc. 501, as follows: 'The Legislature has the undoubted right by a later act to divest a municipal corporation of its right to impose license taxes and resume the exercise of the power itself.' *Brazier v. Philadelphia,* 215 Pa. 297, 64 Atl. 508, 7 Ann. Cas. 548; *Wilkie v. Chicago,* 188 Ill. 444, 58 N. E. 1004, 80 Am. St. Rep. 182; Black, Constitutional Law, p. 279. So, while the appellant city had the right to adopt the ordinance under which it attempts to collect of the owners of automobiles and motor trucks the license fee thereby imposed for the use of the streets by such vehicles, it is equally true that the Legislature had the power to withdraw from it the power to impose or collect such license tax of nonresident owners of such vehicles, where the latter pay such a tax under a law of their own state."

*City of Buffalo v. Lewis,* 123 App. Div. 163, 108 N. Y. Supp. 450, was a suit to recover a penalty for a violation of an ordinance of the city imposed upon defendant as the owner of an automobile. The point raised by a demurrer to the petition was that the city had no power to enact the ordinance, or that it had since been invalidated by statute. The ordinance was passed pursuant to a grant of power contained in the charter of the city. After the ordinance was passed, the Legislature enacted what was known as the Motor Vehicle Law (Laws 1904, c. 539). By section 4 of said act it was provided that, "subject to the provisions of this act, local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring"

from owners of motor vehicles licenses or permits to use the public highways or prohibiting them from free use thereof, they having complied with the provisions of this act, and all such ordinances, rules, and regulations in force at the time this act took effect were declared to be invalid and of no effect. Construing which, the court said that the object and purpose of the act was to provide exclusively (with certain exceptions) for the use of the public highways of the state by motor vehicles, and that:

"It seems to us that the provisions of section 17 of the charter, as amended in 1904, giving the city power to enact ordinances imposing a tax upon the owners of automobiles for the privilege of operating the same upon the public streets of the city, and to prohibit such use of the streets in event of the nonpayment of the tax, and providing a penalty in addition to the tax, were repealed by section 7 of the Motor Vehicle Law. * * * The Motor Vehicle Law provides that the city shall have no power to pass, maintain, or enforce ordinances requiring from owners of automobiles licenses or permits to use the streets, or prohibiting the free use thereof, and that all such ordinances thus in force should be invalid."

Whereupon the court held the demurrer to the petition was properly sustained. This case was affirmed in *City of Buffalo v. Lewis,* 192 N. Y. 193, 84 N. E. 809, where the court held the ordinance to be a plain attempt to violate the Motor Vehicle Law, and hence void.

*Kalick v. Knapp,* 73 Or. 558, 142 Pac. 594, 145 Pac. 22, was a suit in damages for personal injuries as the result of colliding with an automobile driven by defendant at the intersection of certain streets in Portland. On the trial the plaintiff offered in evidence certain ordinances of the city purporting to regulate the speed of

automobiles within its limits. But the court refused to allow their introduction upon the ground that they had been superseded by an act of the Legislature known as the Oregon Motor Vehicle Law (Gen. Laws 1911, pp. 265-278). There was a verdict for defendant, whereupon plaintiff appealed, and assigned as error the ruling of the court. But the Supreme Court held that such it was not, for the reason, among others, that the Constitution contained a provision:

"That the legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town."

But for which the court would probably have held that the charter provision was superseded by the state law, and the ordinance in question void. And so we hold that article 2, sec. 3, par. 30, of the city charter, which granted power to the city to impose by ordinance the license fee sought to be enforced, was superseded or repealed by section 8 of the General Highway Law, and hence Ordinance No. 1165, as amended by Ordinance No. 1250, is void and unenforceable; that is, if the Highway Law is not unconstitutional.

Counsel contend that it is, because, they say, that part of section 11, art. 4, of the act which reads:

"Provided, that the county treasurer is hereby authorized and directed to pay to the treasurer of any city of the first class or operating under a charter form of government in such county, twenty-five per cent. (25 per cent.) of all fees collected by such treasurer, which fees were originally paid as provided herein by residents of any such city on motor vehicles, owned by such residents * * *"

—is contrary to section 20 of article 10 of the Constitution, which reads:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."

Not so. The act in question is not an attempt by the Legislature to levy taxes for local purposes. Rather it is an exercise by the Legislature of the police power of the state in the exaction of a registration fee or privilege tax in the nature of compensation for damage done to the roads of the state by driving an automobile over them, the same to go to the support of the highways of the state, in which the state has a paramount interest. The section of the Constitution under construction forbidding, as it does, the Legislature to levy taxes for municipalities for local purposes, has no application here, for the reason stated in Limitations of Taxing Power and Public Indebtedness by Gray, sec. 677a. There it is said:

"The right of local self-government in matters of purely local concern is secured in many states by provisions forbidding the Legislature to lay taxes in municipalities for local purposes. These provisions, however, do not prevent the state from exercising taxing power in municipalities for those varied local objects in which the state is deemed to have paramount interest, such as highways, police, charities, and the like. * * *"

In *Ex parte Ambler*, 11 Okla. Cr. 449, 148 Pac. 1061, petitioner was convicted for the violation of section 4260 (Comp. Laws 1909, secs. 4242-4263) of the Medical Practice Act, and brought *habeas corpus* to test the validity of the act. For the reason that said section provided for an annual county license fee of $50, to be paid by itinerant venders doing business in any county in the state, and provided, "Said sum shall be paid to the county clerk, who

shall pay the same over to the county treasurer for the use of the county road and bridge fund of said county," he contended that the act was unconstitutional as in contravention of the section of the Constitution under construction. But the court held not so, and after holding that the identical question was determined precisely contrary to petitioner's contention in *Thurston, County Treasurer, v. Caldwell et al.*, 40 Okla. 206, 137 Pac. 683, quoted the syllabus of that case, which reads:

"Section 20, art. 10, Williams' Ann. Const. Okla.; which provides: 'The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes,' applies to purely municipal affairs, and does not constitute a limitation upon the power of the Legislature of the state to impose taxes for purposes which, although of a municipal character, the state has a sovereign interest in, such as taxation for police protection, for streets, highways, and bridges, for the purpose of establishing and maintaining a public school system, etc."

In *Ex parte Schuler*, 167 Cal. 282, 139 Pac. 685, Ann. Cas. 1915C, 706, the Supreme Court of California, in testing the validity of the Motor Vehicle Act of May 31, 1913, in the light of a constitutional provision, substantially the same, if not identical, as section 20, art. 10, of our Constitution, *supra*, in the syllabus said:

"Such act, which imposed an excise or privilege tax for the purpose of providing a fund for roads under the control of the state authorities, was valid; the tax being in the nature of compensation for the damage done to the roads of the state by such vehicles."

We are therefore of opinion that the point is not well taken, and that the act must stand, unless unconstitutional on other grounds.

Counsel contend that it is, because, they say, that part of article 4, sec. 3, of the act which reads, "The registration fees imposed by this article upon motor vehicles, other than those of manufacturers and dealers, shall be in lieu of all taxes, general and local, to which motor vehicles may be subject as personal property under the laws of this state," and section 12, which reads "* * * After July 1, 1915, no motor vehicle, as defined herein, shall be taxed on on _ad valorem_ basis, and the county assessor shall not make return of any such motor vehicle in any assessment sheet after said date," constitute an attempt on the part of the Legislature to exempt from taxation motor vehicles which were not so before, contrary to Const. art. 5, sec. 50, which reads, "The Legislature shall pass no law exempting any property within this state from taxation, except as otherwise provided in this Constitution." But this was not an exemption of property, but a substitution of one form of taxation for another, as held _In Re Gross Production Tax of the Wolverine Oil Company, ante,_ p. 24, 154 Pac. 362.

It is unnecessary to determine whether the act violates article 10, sec. 5, of the Constitution, requiring that "taxes shall be uniform upon the same class of subjects." This for the reason that said provision was not controlling on the Legislature in the enactment of the statute in question, imposing as it does a special license tax, and not an _ad valorem_ personal property tax. _McGannon, Adm'r, v. State ex rel. Trapp et al.,_ 33 Okla. 145, 124 Pac. 1063, Ann. Cas. 1914B, 620. In fact, the tax here imposed is not a "tax" within the contemplation of said section.

*Jackson, Sheriff, v. Neff,* 64 Fla. 326, 60 South. 350, was *habeas corpus.* Whether the prisoner should be released upon the writ turned upon the question of the validity of an act entitled "an act to license automobiles and other motor driven vehicles using the public roads or highways in the State of Florida either for hire or otherwise," approved June 5, 1911 (Laws 1911, c. 6212). The act was one imposing a county license tax, the extent of which was to be determined by the horse power of the automobile, as here. It provided that the payment of one annual county tax would exempt the owner or operator of the automobile from the payment of any other such license tax during the license year. The tax arising from the exaction was to go to the road and bridge fund of the several counties. It was contended that the act was in violation of Const. art. 9, sec. 1, which made it the duty of the Legislature to provide for a uniform and equal rate of taxation, in answer to which the court said:

"A license fee is not a tax, within the meaning of the provisions of the organic law requiring uniformity of rates and just valuations of property for purposes of taxation. See Cooley on Taxation (3d Ed.) 392; *Harder's Fireproof Storage & Van Co. v. City of Chicago,* 235 Ill. 58, 85 N. E. 245, 14 Ann. Cas. 536; *Ayres v. City of Chicago,* 239 Ill. 237, 87 N. E. 1073; Babbitt on Motor Vehicles, sec. 90 *et seq.; Garrett v. Turner,* 235 Pa. 383, 84 Atl. 354."

In *Harder's Fireproof, etc., Co. v. City of Chicago,* cited by the court in that case, in the syllabus, it is said:

"Section 9 of art. 9 of the Illinois Constitution, requiring that municipal taxes shall be so laid that they shall be uniform in respect to both persons and property, applies to the taxation of assessable property alone, and not to the taxation of such intangible rights as the use of the public streets."

See, also, *Wiggins Ferry Co. v. East St. Louis,* 102 Ill. 560, and authorities cited.

Petitioner is discharged.

All the Justices concur.