Allen, J.,
 

 dissenting. I dissent from the decision of the majority herein upon the ground that it is in conflict with the weight of authority in the United States. Also in my judgment the ordinance in question does not conflict with the statute, and, furthermore, the regulation of the speed of traffic upon the streets of a municipality is an exercise of the power of local self-government, and hence the decision in this case contravenes the express provision of Section 3 of Article XVIII of the Constitution that municipalities shall have all powers of local self-government.
 

 The decision runs counter to the weight of authority in the United States, as shown by the decisions cited in 1 Berry on Automobiles (6th Ed.),
 
 *93
 
 page 74
 
 et seq.;
 
 1 Blashfield’s Cyclopedia of Automobile Law, 223-239.
 

 The ordinance does not conflict with the statute. The two enactments differ, but they do not conflict. The ordinance makes it unlawful to exceed the speed of 15 miles in passing a schoolhouse or public playground. The statute imposes no such limit, and, in fact, makes no regulation with regard to the speed of automobiles in passing a schoolhouse or public playground. The conditions around such institutions at the time specified in the ordinance, namely, school hours and hours during which public playgrounds are used, immediately suggest the reasonableness and the wisdom of the policy stated in the ordinance. On the face of its provisions, so far as applying a specific speed limit to the vicinity of such institutions is concerned, the ordinance is merely carrying out and making more specific the provisions of the statute prohibiting reckless driving.
 

 The statute provides that a speed of greater than 25 miles an hour within portions of a municipal corporation other than the business or closely built-up portions shall be
 
 prima facie
 
 evidence of a rate of speed that is greater than is reasonable or proper. This court has laid down the test of conflict between an ordinance and a statute as follows: Does the ordinance prohibit an act which the statute permits, or permit an act which the statute prohibits?
 
 Village of Struthers
 
 v.
 
 Sokol,
 
 108 Ohio St., 263, 140 N. E., 519. Certainly the statute does not expressly permit driving at a rate of speed greater than 15 miles per hour past a schoolhouse or public playground during the hours of their use. The stat
 
 *94
 
 ute contains only an indefinite provision as to speed limit. Instead of imposing a positive speed limit, it, by inference from the provision as to
 
 prima facie
 
 evidence, allows a rate of speed not in excess of a certain number of miles, if such rate is not negligent or reckless. The gist of the statute is that part of the provision which prohibits and penalizes reckless driving. The ordinance does contain a provision as to speed lower than that inferentially established by the statute. This statutory speed, however, is necessarily limited by the provision as to reckless driving. The statute in none of its phrases authorizes the defendant in this case, or any other person, to drive at the rate of 15 miles within the city of Akron, even outside of the closely built-up portions thereof, everywhere, in all places, and under all conditions. The statute itself contemplates a lower rate than 25 miles and a lower rate even than 15 miles in certain places and under certain conditions, which are not in detail described. The ordinance simply defines one of the circumstances under which this lower rate contemplated by the statute shall apply within the city of Akron, and is therefore not in conflict therewith. Certainly it does not permit an act which the statute prohibits, and neither does it prohibit an act which the statute permits. In fact, the ordinance supplements the statute. It aids in the enforcement of the general purpose of the statute as to reckless driving, which restricts the provision as to a rate of speed not in excess of a definite number of miles.
 

 Holdings along this line are to be found in a great number of cases from courts of last resort in the United States, a few of which I shall quote.
 

 
 *95
 
 In
 
 Brazier
 
 v.
 
 Philadelphia
 
 (1906), 215 Pa., 297, 64 A., 508, 7 Ann. Cas., 548, an ordinance which provided that no person should drive a motor vehicle at a rate of speed greater than seven miles per hour within the built-up portions of the city, and at a greater speed than eight miles per hour in the other portions, was held not invalid as in conflict with a statute providing that no person should be allowed to operate a motor vehicle on any of the public streets of a city at a greater speed than a mile in six minutes within the corporate limits, and that outside the corporate limits of any city the lawful rate of speed should not exceed one mile in three minutes.
 

 In
 
 Christensen
 
 v.
 
 Tate
 
 (1910), 87 Neb., 848, 128 N. W., 622, the second paragraph of the syllabus reads as follows:
 

 “The law gives cities of the second class control of their streets, and an ordinance regulating the speed of motor vehicles in the streets will not be held void as in conflict with the statute on that subject, unless it appears that the limitation of speed is such as to prohibit the free use of the streets' by such vehicles.”
 

 The ordinance in this case provided that no automobile should be driven in the streets at a greater rate of speed than eight miles an hour, and that, in turning a corner of any street or avenue, or crossing the intersection of any street or avenue, or in any alley of the city, the speed should not be greater than four miles an hour. The act of the Legislature (Laws Neb., 1905, c. 129) contained this general provision: “No person shall operate a motor vehicle on a public highway at a rate of speed greater than is reasonable and proper, having regard to the
 
 *96
 
 traffic and use of the highway, or so as to endanger the life or limb of any person,” and provided specifically that in the closer built-up portion of a city, town, or village, such vehicle should not be operated at a greater rate of speed than one mile in six minutes, and in other portions of a city, town, or village, the speed should not be greater than one mile in four minutes, and, outside of a city, town, or village, the speed should not be “at a greater average rate than twenty (20) miles per hour.” The act further provided (Section 11) that “cities and towns shall have no power to pass, enforce or maintain any ordinance, rule or regulation * * * or exclude or prohibit any motor vehicle * * * from the free use of such highways, and all such ordinances, rules or regulations now in force, are hereby declared to be of no validity or effect.”
 

 In
 
 City of Bellingham
 
 v.
 
 Cissna
 
 (1906), 44 Wash., 397, 87 P., 481, the syllabus reads as follows:
 

 “Chapter 154, Laws 1905, p. 293, providing for a state license of automobiles, and declaring that cities shall have no power to require any such license or to exclude automobiles from the free use of the streets, does not prevent a city from limiting the speed of automobiles within its limits to six miles per hour, although Laws 1905, § 10, provides that such speed shall not, in thickly settled or business portions of the city, exceed twelve miles per hour; in view of § 12 of said chapter, providing that no greater speed shall be attained than is reasonable and proper, having regard to the traffic,” etc.
 

 In
 
 Roper
 
 v.
 
 Greenspon
 
 (1917), 272 Mo., 288, 198 S. W., 1107, L. R. A., 1918D, 126, it was held that the Laws of 1911, page 322, regulating the operation of
 
 *97
 
 automobiles, and providing that tbe statute shall be exclusively controlling, and that every person operating a motor vehicle on the public highway shall drive at such a rate of speed as not to endanger the property of another, and that a rate of speed in excess of 25 miles an hour for a distance of one-half a mile shall be presumptive evidence of careless driving, “did not expressly or by intendment withdraw from cities the power to regulate the speed of automobiles upon their streets, nor does such act deprive cities of their power to enact valid ordinances providing reasonable speed and other regulations in the use of streets by automobiles.”
 

 In this case the ordinance provided: “No automobile * * * shall be moved or propelled along, over or upon any public street, * * * at a greater rate of speed than is reasonable, having regard to the traffic and use of such street, * * * or so as to endanger the life or limb of any person, or the safety of any property, and shall not in any event, * * * be moved or propelled at a greater rate of speed than eight miles per hour in the business portions of the city, and not greater than ten miles per hour in the other portions thereof.”
 

 In
 
 City of Windsor
 
 v.
 
 Bast
 
 (Mo. App., 1917), 199 S. W., 722, the fifth paragraph of the syllabus reads:
 

 “Laws 1911, p. 327, § 9, as to speed of motor vehicles on a public highway of the state, does not apply to travel in city streets, and does not limit the power of the city to make regulations.”
 

 Section 9 of the Motor Vehicle Act provided:
 

 “Every person operating a motor vehicle on the public highway of this state shall drive the same in a careful and prudent manner and at a rate of speed
 
 *98
 
 so as not to endanger the property of another or the life or limb of any person: Provided, that a rate of speed in excess of twenty-five miles an hour for a distance of one-half of a mile shall be presumptive evidence of driving at a rate of speed which is not careful or prudent.”
 

 In
 
 District of Columbia
 
 v.
 
 Bailey,
 
 57 App. D. C., 151, 18 F. (2d), 367, the speed regulation of the District of Columbia was held not in conflict with the traffic act of the district. The syllabus in that case reads as follows:
 

 “Traffic Regulations of District of Columbia,
 
 * * *
 
 prohibiting greater speed than 15 miles an hour for passenger vehicles on certain bridges, adopted by director of traffic pursuant to District of Columbia Traffic Act [43 Stat., 1119], * * * held not in conflict with Section 9, subds. (a), (b), prohibiting a speed greater than 22 miles per hour, except in outlying districts or on arterial highways, or any speed greater than is reasonable or proper. ’ ’
 

 Sims
 
 v.
 
 Martin,
 
 33 Ga. App., 486, 126 S. E., 872, held in the tenth paragraph of the syllabus:
 

 “There is no inconsistency or conflict between a legislative act limiting the speed of an automobile to 30 miles per hour in a city and an ordinance of the city limiting such speed to 15 or 8 miles per hour under the same conditions and circumstances. The ordinance of a city penalizing a less speed than is penalized by the statute of the state is merely supplemental to the statute. The plaintiff may allege negligence either under the statute or under the ordinance, or under both.”
 

 In
 
 Ham
 
 v.
 
 County of Los Angeles,
 
 46 Cal. App., 148, 189 P., 462, the seventh paragraph of the syllabus is:
 

 
 *99
 

 “A
 
 county ordinance which declares it unlawful to drive any vehicle over or across any county bridge at a rate of speed greater than five miles an hour is not in conflict with the provision of subdivision (b) of section 22 of the Motor Vehicle Act, which declares that a motor vehicle shall not be operated over bridges at a rate of speed greater than ten miles an hour where the view of the road traffic is obstructed.”
 

 The California Supreme Court endeavored to distinguish this case in the decision in
 
 Ex parte Daniels,
 
 183 Cal., 636, 192 P., 442, 21 A. L. R., 1172, cited in the majority opinion. The distinction seems to me tenuous indeed, and Judge Shaw, in the dissent in that case, points out that there is no distinction as to the general principle that, where a city ordinance makes a local regulation tending to afford greater protection to the safety or health of the people than is given by the general laws regulating the same matters, such city ordinance is not in conflict with general law.
 

 Supporting this general proposition are
 
 Brennan
 
 v.
 
 Recorder of City of Detroit,
 
 207 Mich., 35, 173 N. W., 511;
 
 Adler
 
 v.
 
 Martin, 179
 
 Ala., 97, 59 So., 597;
 
 Mancuso
 
 v.
 
 Yellow Taxicab Co.,
 
 231 Mich., 189, 203 N. W., 875;
 
 City of Chicago
 
 v.
 
 Keogh,
 
 291 Ill., 188, 125 N. E., 881;
 
 Kolankiewiz
 
 v.
 
 Burke, 91
 
 N. J. Law, 567, 103 A., 249.
 

 1 Berry on Automobiles (6th Ed.), Section 97, page 75, states:
 

 “In some states it has been held that, aside from statutory prohibition, however, a municipal corporation may enact an ordinance establishing a lower maximum rate of speed for automobiles than that
 
 *100
 
 provided by statute”—citing
 
 Dowdell
 
 v.
 
 Beasley,
 
 17 Ala. App., 100, 82 So., 40, which held: “The fact that the ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirements for all cases to its own prescription.”
 

 The Ohio cases cited in the majority decision as supporting the proposition of the syllabus in my judgment do not apply. In the case of
 
 Niehaus, Bldg. Inspector,
 
 v.
 
 State, ex rel. Board of Education,
 
 111 Ohio St., 47, 144 N. E., 433, the ordinance in question sought to exact a fee for the inspection and approval of plans for public school buildings. It has been heretofore held by this court that schools are a matter of state concern
 
 (Miller
 
 v.
 
 Korns, Aud.,
 
 107 Ohio St., 287, 140 N. E., 773); in other words, the school system is not a subject of local self-government.
 

 In the cases,
 
 City of Bucyrus
 
 v.
 
 Department of Health,
 
 120 Ohio St., 426, 166 N. E., 370, and
 
 State, ex rel. Neal, Dir. of Health,
 
 v.
 
 Williams, Mayor,
 
 120 Ohio St., 432, 166 N. E., 377, the questions involved were the dumping of sewage into streams which discharged their germ-laden contents upon the land outside the confines of the municipality. Sanitation, in every aspect, is necessarily a matter of general government, for disease in one city cannot be confined within the limits of that city; but the case is made even stronger by the fact that the use of streams running through a city for sewage disposal necessarily results in a direct invasion of the rights of other parts of the state with regard to health and sanitation. On the other hand, the eases
 
 *101
 
 of
 
 City of Fremont
 
 v.
 
 Keating,
 
 96 Ohio St., 468, 118 N. E., 114;
 
 Greenburg
 
 v.
 
 City of Cleveland,
 
 98 Ohio St., 282, 120 N. E., 829;
 
 City of East Liverpool
 
 v.
 
 Dawson,
 
 101 Ohio St., 527, 130 N. E., 936, and
 
 Village of Struthers
 
 v.
 
 Sokol,
 
 108 Ohio St., 263, 140 N. E., 519, certainly support the position taken in this dissenting opinion that the ordinance in question is not in conflict with general law.
 

 Also in my judgment the decision of the majority is incorrect, because it violates the principle of local self-government, so long recognized in this state, with regard to control of the streets of a municipality, and violates the express provision of Section 3, Article XVIII, of the Ohio Constitution, that municipalities shall exercise all powers of local self-government.
 

 Long prior to the enactment of the home rule amendment, the right to regulate traffic on city streets was recognized as constituting a peculiar power of local self-government. That the power here in question is exercised only within the confines of the municipality is self-evident, and to that extent it is manifestly local. Now Section 3632, General Code, adopted prior to the constitutional amendments of 1912, gives full control of the streets of the corporation to the municipality. Under Section 3632 cities are given the specific power “to license and regulate .the use of the streets by persons who use vehicles, or solicit or transact business thereon; to prevent and punish fast driving or riding of animals, or fast driving or propelling of vehicles through the public highways.”
 

 The reason for this enactment is patent to the most surface observer. The municipality knows the
 
 *102
 
 conditions and the needs of its own traffic better than any state Legislature, however intelligent. In the Ohio river towns, the existence of narrow, winding streets, abutting here and there upon cliffs and hills, with interurban cars carrying through traffic at comparatively high rates of speed, and with highways which pass through sharply turning tunnels under railway bridges, the problem of automobile traffic upon streets, where the pedestrian necessarily has to be considered more than in the open country, is vastly different, both from the general problem throughout the state and from that existing in a city of wide streets, flat surfaces, and straight lines of travel. In cities such as Fostoria or Bellevue, intersected by numerous railway tracks with interurban service constantly operating large and heavy cars, the problem of speed is entirely different from that to be found in a municipality cut by no railway lines whatever.
 

 I might cite instances of this kind
 
 ad infimtum.
 
 Because of the recognition of this fact, courts of last resort in states where home rule, as we know it in Ohio, does not exist, have hesitated to hold that ordinances of this kind are in conflict with state law.
 

 Because of the very nature of the problem, recognized for generations as being a purely local question, in my judgment the regulation of traffic on the streets of a city comes within the power of local self-government, and is not, and cannot be, limited by general law.
 

 In
 
 Kalich
 
 v.
 
 Knapp
 
 (1914), 73 Or., 570, 145 P., 22, Ann. Cas., 1916E, 1055, reversing on rehearing (1914), 73 Or., 558, 142 P., 594, Ann. Cas., 1916E, 1051, where a section of the Constitution provided
 
 *103
 
 that the Legislature should not enact, amend, or repeal any charter or act of incorporation of any municipality, and the legal voters in municipalities were granted power to enact and amend their charters, subject to the Constitution and criminal laws of the state, and another section of the Constitution reserved the initiative and referendum powers to local voters of every municipality, it was held that these provisions limited the legislative power over the subject of municipal traffic, and that a motor vehicle act declaring that its purpose was to limit the authority of municipalities on like subjects, and providing that local authorities should have no power to prescribe a lower rate of speed than that fixed by the act, was unconstitutional, although the act provided for a punishment for its violation.
 

 In
 
 People, ex rel. Hainer,
 
 v.
 
 Keeper of Prison
 
 (1907), 190 N. Y., 315, 83 N. E., 44, affirming (1907), 121 App. Div., 645, 106 N. Y. S., 314, the syllabus reads:
 

 “Under the provisions of the Motor Vehicle Law (L. 1904, ch. 538), permitting the local authorities of cities and incorporated villages to ‘limit by ordinance, rule or regulation hereafter adopted, the speed of motor vehicles on the public highways,’ such municipalities have only the power to prescribe a lower rate of speed within their territorial jurisdiction than that permitted by the general law.”
 

 In
 
 Kelly
 
 v.
 
 James,
 
 37 S. D., 272, 157 N. W., 990, the second paragraph of the syllabus is as follows:
 

 “Under Laws 1913, ch. 276, being the motor vehicle law, Section 20, providing that, except as therein provided, local authorities shall have no power to pass or enforce any ordinance requiring
 
 *104
 
 from an automobile owner any fee, license or permit for use of public highways, or excluding any such owner from the free use of public highways, or in any way regulating motor vehicles or their speed, upon, or in the use of public highways, and that no ordinance or regulation contrary or in any wise inconsistent with the provisions of the act should have any effect, held, that the Legislature, in enacting said vehicle law, did not intend to deprive municipalities of the power to enact ordinances in relation to the laws of the road, or to give any greater privileges to drivers of motor vehicles than were enjoyed by drivers of all vehicles; that said statute aimed to prevent municipalities from singling out motor vehicles and legislating against them in particular; and sueh statute did not annul a city ordinance requiring persons driving or operating a vehicle, whether motor or animal drawn, on any street in a city to keep to the right hand of such street and as close as possible to. the curb; said ordinance not being contrary to or inconsistent with the provisions of said statute.”
 

 1 Blashfield’s Cyclopedia of Automobile Law, 238, 239, states:
 

 “An attempt of the Legislature to limit by a general law the power of local legislative bodies to pass regulations, not inconsistent with the general law regulating the use of the highway and the operation of motor vehicles, would violate a constitutional provision expressly granting authority to municipalities to enact local regulations; and under home rule provisions in some of the state Constitutions, the Legislature has been held to have no power to nullify or amend the charter or ordinance of a city
 
 *105
 
 in a matter of acknowledged local concern, such, as the regulation of traffic over its streets. Consequently in such jurisdictions motor vehicle acts which attempt to limit the authority of cities and towns to prescribe a lower rate of speed for motor vehicles than that provided in such an act are ineffective.
 

 “In some jurisdictions, however, as has been already stated, a provision of the Motor Vehicle Act prohibiting municipalities from passing any ordinance limiting or restricting the speed of motor vehicles and declaring any such ordinance void, has been given full force. [Citing
 
 Elie
 
 v.
 
 Adams Express Co.,
 
 300 Ill., 340, 133 N. E., 243.]
 

 “This legislation seems vicious. The principle of home rule, recognized by the organic law of many of the states, would seem to guarantee to the inhabitants of a city the right to legislate on matters so vitally affecting their lives and property as the rate of speed of such vehicles.
 

 “The only reason urged for such legislation is the divergent character of municipal regulations as to speed, making it hard for the motorist to know the law. But if he does not know the precise limit of speed permitted to him, he does know that, if he travels at such a rate that his car is absolutely under control, he can offend no local regulation. It ought to be no hardship, while passing through a strange municipality, to forget speed and look only to safety. To take away from municipalities the power to protect their citizens from reckless motorists, to violate the principle of self-government, constituting one of the fundamental characteristics of the republic, in order that the motorist may attain the utmost speed
 
 *106
 
 possible within the law, is very like tearing down the house to save the parrot.”
 

 If the decision of the majority in this case is to stand, the municipal right of home rule, in my judgment, will be seriously invaded.